Good morning. May it please the court. My name is Walter Boone. I am pro bono counsel for Leon Trotter and have been so since roughly September of 2017. So you were the counsel at the evidentiary hearing? Yes sir, I was. Leon's case was unique and it's been unique in all of the Miller cases that I've read in the sense that Leon Trotter had three different post-conviction claims. He had ineffective assistance of counsel. He had a new trial claim. Both of those required an evidentiary hearing and if successful would get him a new trial. That would make Miller move. That was your assumption going into the hearing? 100 percent. The third claim... And the two, those two sort of are similar. My guy's innocent. Pittman did it. Right. We win, we get a new trial. If we lose, then we move on to the sentencing Miller claim, which is exactly what we intended, what I intended to do and I think what was actually communicated in the pleadings on the way through. But the judge did say this is your evidentiary opportunity on all three. She drove the distinction judge and the order granting the hearing. She said, under the new trial you get an evidentiary hearing and under your Miller claim you get a new resentencing hearing. Separate paragraphs in the order granting the hearing. She drove... I thought in that, I may be wrong, I thought in that order and then again in the hearing she said this is your chance on all three claims. She did not say that in the hearing. She did say in the concluding paragraph of the order that evidentiary hearing would be for all three claims. What I assumed and what I think is reasonable from the status of the pleadings and the law is that we would decide the new trial claims first. If we win, there's a new trial, we don't even need to get to Miller. If we lose, then we do what the law required, which is you vacate the sentence or go ahead and award parole eligibility or relitigate the sentence. I respect that. That does seem to me your assumption. It slightly creates the awkwardness that we have a COA grant on the legal proposition that Miller requires a de novo resentencing. That's what we've granted COA on. Yes, sir. But you'd have to agree one approach to this would be fatal attorney misassumption. We already had Montgomery out there and Montgomery, and you can push back on this, says as to remedies when it's a retroactive Miller claim, it's your burden, you the defendant's burden to present mitigation and that just doesn't get presented. Well, with respect, I will push back. That is not what Montgomery says. Montgomery does not impose a burden on the defendant or anybody else. Well, Montgomery says the defendant has, quote, opportunity to show their crime did not reflect irreparable corruption. It puts the mitigation opportunity on the defendant. It says an opportunity. It does not say a burden. But you, how can you see this? How can you look at this record? Again, I understand your argument. It's a significant case, but and not say you had the opportunity where you had combined all three claims. The judge is saying all three claims are before me. That sounds like an opportunity. You put the mother on, you put Trotter on. That sounds like an opportunity. Well, there is an opportunity that's true, but that's not what the law required. And let me read on Montgomery because I think this is the key. And this is the law that, quite frankly, I was looking at and reading when we went to this evidentiary hearing. Here's what Montgomery says about what the remedy is. It says giving Miller retroactive effect, moreover, does not require the states to relitigate sentences, let alone convictions, in every case where a juvenile offender received a mandatory LWOP sentence. That much, district court held, there you go. But Montgomery goes on to tell us what the remedy is and cites a Wyoming statute that says, OK, for all homicide juvenile offenders, you get parole eligibility after 25 years. It goes on to say a state may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole rather than by resentencing them. So what Montgomery says is you don't have to relitigate the sentences. You just make them parole eligible or you relitigate the sentence. And that is exactly what we asked. Well, but what about Chandler? Didn't Chandler come before this hearing and Chandler did not relitigate the sentence? It was almost exactly what happened here. There was a published state court ruling from Chandler, but it didn't. It actually set aside the verdict and ordered a new sentencing hearing exactly what we thought the law was. It actually proves our claim, not the state's claim. But you've got to concede that after this hearing, I may be misreading or misremembering Chandler, but after this, exactly what happened in your case happened many other times. And was affirmed by the Court of Appeals or the Supreme Court. In other words, not a vacular of the sentence, but a hearing where the defendant came in, presented evidence. There was this whole question that I remember grappling with when I was in the state Court of Appeals about this permanent incorrigibility and whether you had to make that finding or didn't have to make that finding. But I mean, as far as what happened here, it overlays, at least with my memory of exactly how courts were doing this, at least in 19 and 20. Well, I realized this was 18. It was. But the other thing is you've got to grapple with the federal court's review of what the state courts did. We owe a lot of deference to the state court and what the Court of Appeals said, Judge Greenlee says, you had your opportunity. You just didn't present the evidence. Maybe you wanted to present more evidence, but the circuit court judge said, here's the evidence. And the order granting the hearing specifically mentions all three things. It does. It does. Couldn't you have done the Miller in the alternative? But that would have been contrary to the law, Judge. I don't know that it was contrary to the law at all. I mean, it's got to be so clearly contrary to what the Supreme Court says in Miller and Montgomery that basically what the state courts did had no basis whatsoever. Substantively, it mirrors exactly what has happened in dozens of these Miller cases. Well, you referenced a couple of issues, but the law at the time was exactly what we asked for, which is vacate the sentence and order resentencing. Every single published decision said that. Every single court order that we got our hands on. But aren't we looking at, aren't we looking, as Judge Wilson said, we're looking at a final decision by an intermediate appellate court. It cites Miller. It lists the Miller factors. So we have to say with 2254, highly deferential standard, that's inconsistent with clearly established federal law. So what is the clearly established federal law, federal law that has ever reversed a state court in its process given post-Montgomery? Two things. No, not, I just want a federal case.  So you agree Montgomery is the controlling case. There's no circuit that's ever invalidated post-Montgomery a state process pursuant to Montgomery. Do you understand my question? I understand the question. Is there any circuit? I don't believe there's a case in Mississippi now. No, I'm not asking Mississippi law. I'm asking, is there any federal law anywhere in this country that has looked at the process given post-Montgomery and said that's inconsistent with clearly established federal law? Is there any circuit that's done it? I'm not aware of that. Okay, but you're asking us to do it. You're asking us to say the process given here in a hearing after Montgomery doesn't fit with Montgomery. That's your clearly established law. Miller and Montgomery and Jones, correct. Yes, sir. Okay, so, but then we're back to Montgomery says you get an opportunity to give mitigation evidence. You get an opportunity to have a parole hearing and right or wrong, you took a gamble when you decided my client's not going to show remorse. He's not going to even talk about capacity to change. He's going to blame it all on Pittman. That doesn't sound like a Miller defendant. That was what the law said we had to do and that's what we did. Well, but I mean, effectively what you did does not impose a burden and the Mississippi Court of Appeals did and that was wrong. That was incorrect and unconstitutional. Mississippi put a burden on whom? Yes, sir. Burden on whom? On the defendant. On you. Yes. To do what? To prove that his sentence was unconstitutional, which he had already done first because under Miller as defined by Jones. I think everyone's agreeing the sentence was unconstitutional. The question is just remedy. Right. And the Mississippi courts gave you an opportunity. You didn't, as Judge Wilson said, argue in the alternative. You could have said, here's a very immature young man. He had transient immaturity and, you know, the financial shooting was just a momentary one. He was, but you never did develop any of that. Instead, you said it was, you really went down on the original defense that Pittman was the killer. That sounds sort of remorseless. I understand what your perception is of that after the fact. I'm just throwing it out for you to use. What I was trying to do was follow the law, which actually said you need to decide the new trial issue. Did you ask to sever the issues? Did you ask to sever the issues? No, sir. So you never asked Judge Lewis Blackman to hold the Miller issues in abeyance, so to speak, pending the first two, the new trial issues. I mean, I get the tension between trying to show he didn't do it. And then in the same hearing showing he has remorse, he's rehabilitable, he should be granted parole, et cetera, and so forth. I mean, I get that. But if it's a strategic call and you didn't ask the court to sort of keep that Miller issue live, I mean, the circuit court gave you the opportunity and made it clear that all three claims would be subject to this hearing, correct? Well, and what we did at the hearing, what I did at the hearing is say exactly that. Under Miller and Montgomery, you got to vacate the sentence. Well, but what you did at the hearing was exactly. It was like, as a matter of law, the sentence is unconstitutional, so therefore it's got to be vacated. I just don't know that that was the law at the time, or that was what other courts were doing in the Miller context. Maybe I'm wrong, but it's not what I remember during the slightly later tenure on the Court of Appeals. Well, and that's precisely the problem, Judge, is because I was there. I do know that was the law at the time. Every reported decision said you vacate the sentence and then order re-sentencing. Well, the problem was- But we've got to conclude, though- Well, but we've got to conclude, though, that what happened in this case was such a departure from what the Supreme Court, the United States Supreme Court, required that there was no reasonable basis for it. It was a completely unreasonable application of the federal law. Well, the problem you've got, as retroactive or otherwise, the Supreme Court has come out and said, no, it's not unreasonable. You don't have to vacate the sentence. You just have to give them an opportunity to show these factors. Well, I mean, if that was the law also and the Supreme Court just hadn't clarified it, it doesn't mean that what happened in your case traversed at least our habeas review. Well, with respect, I disagree. I think it does because I think when you're applying what happened later to Mr. Trotter in 2018, that's not- But you don't dispute you had Montgomery before the 2018 hearing? One hundred percent. So just remind me, and I can look in the record. What did you say when you made your Miller claims and got this hearing? What did you say about Montgomery? I asked for the exact- No, I'm asking you how- I'll just go back and look at it. No, no, no. What specifically did you say Montgomery stands for? Do you remember? Yes, sir. I have it right here. Not Mississippi law, Montgomery. Yes, sir. I said in opening, I said he was convicted with mandatory- with life without the possibility of parole, which has been subsequently ruled in Miller versus Alabama to be unconstitutional. Everyone agrees. Which you don't need an evidentiary hearing for that. So you did- so far, you've said nothing about Montgomery? I didn't cite Montgomery case. I said what the law was, which was the most recent version. You are telling us now the clearly established law we have to apply is Montgomery. So far, you haven't applied Montgomery. Well, the matter's right for consideration based on the law and some of the things we submitted to your Honor. Because I fully agree. Miller did say that. And a lot of courts were struggling. But then a lot of courts think that Montgomery cleared it up and reduced what needs to be given and arguably shifts the burden. Because your time's running out, I just have one other legal question. Sure. Do you know of any Miller defendant, again, anywhere in the country that has received Miller relief while persisting in an innocence claim? In other words, they're not saying, I was immature. You know, I can change. I'll get better. They're saying, I didn't do it. Do you know of any Miller- I'm not saying they don't deserve it. I just wasn't able to find that law myself. I didn't- I don't know of any. I will say before my current time's up, let me- Because what it does say, it gives the remedy right there in the language we just read. It says you can give them the parole eligibility or you can relitigate the sentence. That's exactly what I asked in the evidentiary hearing, both in opening and closing. And in the pretrial briefing, said you can go ahead and reward parole eligibility right now. Or we can relitigate the sentence. And that- and unfortunately, the trial court did neither. That was a violation. Although in a parole hearing, it's your opportunity to present all the mitigating circumstance. So the court might have thought, okay, this is their opportunity. Oh, well, he's going down a different road. He's doubling down. Well, that would be contrary to the law at the time. And it's an unreasonable and I think an unconstitutional imposition on my client. Yeah, we appreciate your argument. And you have rebuttal time. Sure, we have plenty of questions for the government. Good morning. May I please the court. Justin Matheny for the state. It forecloses petitioner's claims- You're going to need to speak up. We have been having a problem in this courtroom the whole week somehow or other. There's just not enough volume and you're going to need to compensate. As the district court ruled, petitioner's state post-conviction proceeding comported with the Miller versus Alabama line of cases. Miller does not categorically bar life without parole sentences for juvenile murderers. And when applying Miller retroactively, as Montgomery versus Louisiana ruled, state courts do not have to relitigate such sentences. The offender is entitled to a hearing, a chance to convince the court to award him parole eligibility after considering Miller's youth-related sentencing factors. Would you agree that on this record, it looks like even the prosecution thought he was going to get a new sentencing? And I'll ask three sub-questions to that. Did the prosecution ever interject and say, you're not going to get a new hearing? Did the prosecution ever say, oh, Montgomery's changed things. This is your chance. Did the prosecution ever do any of that? Yes. This is what the prosecution did. I think that's the easiest way to answer. Everybody at the hearing thought that it was a Miller re-sentencing hearing. I don't think counsel also did. Yeah, I mean, counsel also said, I don't think you need any of the evidence to decide the Eighth Amendment. And the government doesn't object and say, oh, yes, you do. And that was the next thing I was going to say. But here's what the state did. At the closing of the hearing, or after all the evidence was in, and counsel argued sort of this automatic, I'm entitled to parole eligibility as a matter of law argument, the state objected. The state put up cases and said, no, he's got to make a showing on the Miller factors. And then the state had a witness on the sentencing issue. They put Ricky Hill's sister on the stand to provide a statement that was essentially victim impact evidence that I think it relates to. Right, but victim impact is nothing about the youthful indiscretion or impulsivity. Where would you point to? I mean, there's a lot of evidence about Pittman and his youth. How far did we go into Trotter's youthful situation? What witness explored that? The mother? No, no, no, no, no, counsel. Do you know this record carefully? The mother gets on the stand the minute defense attorney asks the mother, let's talk about what his plans were after high school. Government objects, objection sustained. That sounds like Miller evidence that the government blocks. Your Honor, I have to push back on that. You do. ROA 1542. That's not exactly what happened. What happened was, and this was the mother on the stand, question, where did Petitioner graduate high school? He graduated from Thomas Christian Academy in Yazoo City. He was 17 and a half. He'd already graduated high school. Next question. And do you remember when that was? Answer. That was in 2003, May of 2003. Yes, ma'am. And what were his plans as of graduation? ADA objects. Your Honor, I'm going to object about the relevance of this line of question. Court says, what's the relevance? Answer from counsel. I'll move on. The court didn't sustain an objection. But the government interjects when they ask classic Miller evidence. What was he doing at that age? Government objection, not relevant. How can you possibly say, with Miller, and if you're claiming this is a Miller hearing, that wouldn't be relevant? The state's position, I mean, the state was there and defending against the claim. I mean, it kind of goes back. No, the state says it's not relevant. And I'm saying to you what Miller claim says what this young man in high school was doing isn't relevant to a Miller claim. The court didn't sustain an objection on that point. The government objected. My point is the government is blocking his opportunity. Then Trotter takes the stand. Question to Trotter, what were your plans? What were you doing in high school? Objection again. So I'm asking you to point to me any time the government didn't try to stop Miller evidence from coming in. Where do we hear about this man being such a hardened, heinous, extreme young person that he should never even get the chance for parole? Where would you point to in this record to show that level of extremity? I don't see the state pushing back on the claims. OK, well, I just said, and I don't see you objecting, that the government twice objected when the two most likely Miller witnesses, mother and defendant, try to talk about what his situation was. Government objects twice. So now just answer the question I'm asking you. Where do we learn about Trotter's youthfulness and his capacity to change? Who tells us that here? Well, first you have the original Trout Court record, which shows the circumstances of the events. I mean, that's a Miller fact. Well, but you know, counsel, but you know, I mean, what the circuit court says is, well, he wasn't especially immature. And in most of the Miller proceedings I remember coming up on appeal in the state court, there were experts. There were psychologists. They were really centered on this permanent incorrigibility. They were talking about rehabilitation. They were talking about basically the vagaries of youth, as Miller termed it, or Montgomery, one of the cases, and considering those factors in great depth and detail. Not just, well, I mean, you know, he was basically mature for his age. I mean, you've got to admit that the record is very scarce here compared to most of these Miller proceedings. The record is very scarce. The Mississippi Court of Appeals, Judge Brown, Judge Burton acknowledged that. The reason that it is scarce is because it was the petitioner's burden to put on the evidence on those points. But if the petitioner thought pretty much he was going to get a re-sentencing, the sentence had to be vacated because it's unconstitutional under Miller. And, you know, you've got Montgomery. Montgomery doesn't make it clear that vacater is not required or vacater is required. I mean, it sort of gives states options. But, I mean, at some stage, the government didn't bend over backwards to make sure this claim was developed to clarify. I'm not saying the government had the burden to do that. But, I mean, what are we to do with that situation where it looks like, I think Judge Higginson said it. Counsel made this, I'll say it this way. Counsel made a strategic decision not to present it. But counsel clearly evidenced that he thought that's because you'd get a new sentencing hearing, a vacater, and then that would be kind of handled. What counsel thought, maybe what counsel thought, I want to go to that. I mean, at the hearing, and this is quoted on 494 of the Mississippi Court of Appeals opinion. It's at 1697 in the record. And I think it's been basically conceded here today. At the hearing, the argument from counsel was that the court must vacate the prior sentence and reinstate another sentence of life with the possibility of parole. Wasn't asking for a two-step procedure, vacate and then let me come back later. Well, but there is a tension here because you're trying to show somebody else did it. I'm innocent. But then you've got to come in and say, well, and even though I'm innocent, I should be let out of jail on parole at some point because of all these factors. When I did it, I was young and impetuous and not permanently incorrigible, whatever. I mean, there's a big tension there. You sort of torpedo your first two claims in order to present this third claim in the alternative. That's very awkward, isn't it? Well, it's what shows strategic decisions of counsel, not a violation of clearly established federal law. Was ineffectiveness in this case ever? There was the ineffectiveness claim of the trial counsel. But has there ever been, has trial ever been able to allege that the mixture of the evidentiary hearing reflected, sadly, sort of an ineffective understanding of Montgomery? At this point, I've not seen any such claims. I mean, there's no claim in this case on that. I know. Let's say counsel said, you know, I haven't really studied Montgomery. I'm sure that Miller gives me a new sentencing. So I'm going to have a full bore on Pittman. That would be ineffectiveness. That would be wrong under the law, according to you? That could be the basis for an ineffectiveness claim. But he would have to go through, I mean, one, you'd have to prove this Strickland, the standard for Strickland versus Washington. I mean, I guess I'm saying, let's say everyone knew it was only in Miller here, and defense counsel said, I'm just not going to put anything about capacity to change. That could be a problem. And actually, your Honor's question brings to mind, I think it's footnote six in Jones versus Mississippi that speaks to the problem of what happens when counsel does something like that. But it would be fact-dependent. I mean, did the defense put on evidence of transient immaturity? Is there any of that in here? I would look at 134, 135 of the record. It's the trial court's order. And the trial court evaluated the evidence that was in. You have five factors plus, I mean, it's open to five other factors. Now, I'm just asking, when did the mother or trotter ever get into youthful indiscretion? Not youthful indiscretion, but I mean, I think... Do you know any Miller case? This is a separate question. Any Miller case that these facts are so heinous, there's never a chance for parole? The facts being, he had a small dent from a friend. And he goes to the door and shoots her. Is there anything really more aggravating? I mean, it's a murder, which is awful. But can you think of a Miller defendant where that alone means you need to be incarcerated until you die? There were more facts than that, Your Honor. Okay. Aggravating facts? Okay. Aggravating facts. I mean, this was midnight. This was park, five football fields away from the house. Show up at the house. Announce yourself as somebody else to get him to open the door. You're collecting, or you... The purpose for being there is the $35, not just a $35 debt, $35 drug debt. And the Ricky Hill comes to the door and shot her. It's a young person knows another person, $35, and tragically, they've got a gun and they shoot them. I guess, however we characterize the facts, do you know of any other non-eligible ever for parole that's even in this orbit? Well, I would look at it this way. I'm just asking, can you point me to a case where there's a youthful defendant who's got a $35 debt and he kills someone for it? And we're going to say that that's so heinous? On those specific facts, I don't know of a case, but I know this. Every one of these types of cases is different. This is why the Supreme Court said you have to have individualized suits. There may be cases, Miller, 14 year old, caught up with peer pressure, caught up with friends, murder committed. You have this case, 17 and a half year old, graduated... That's fair. 17, no peer pressure. Okay, those... Calculated. And the trial court's the one who's judging the credibility of the witnesses and all of these things. And I would say this, the trial judge was the trial judge at the original trial and heard all the evidence the first time around the conviction. Then again, on the PCR, comes in with the evidence and, I mean, look at the final Miller factor, the rehabilitation thing. Instead of all of those things that Judge Wilson mentioned that you would usually see in a Miller case, the only proof here, and Judge Lewis cited to this, the only proof here was, hey, I got Pittman to do this affidavit. And then he gets on the stand, he completely does it about face. I mean, the recantation witness recants the recantation. That's all Pittman though. I mean, it almost does seem youthful to make a false exculpatory. That's what he did at the beginning and he's always done, right? He's always said it was somebody else. So let me ask you a question. Is your position that you're never entitled to Miller if you insist that somebody else all the way till your Miller hearing did the crime? Does that necessarily forfeit entitlement? It's never entitled to Miller. What it is, is it's individualized sentencing. It's completely, it's five factors. It recognizes five factors. I know, but none of them really are compatible with saying somebody else did it. And in this particular instance, the strategy, the approach that counsel took at the hearing did not work out. But the trial judge had ordered 1342 in the record, had ordered that the three claims would be put on at the hearing. Sorry. Then the trial judge evaluated what was put in front of it. Court of Appeals, based on this record, based on the evidence that the petitioner chose to present, affirmed. Judge Brown, Judge Verden. I mean, every judge that looked at this has said, we've looked at the record and based on the evidence in the record. Every state and federal judge so far? Everyone. Everyone. All 13. And more if you count the denial of Sir Charles in Mississippi. You agree this is bad timing. This is the first time after Montgomery in Mississippi that there's a new framework. And basically 2013 to what, 2015, the rule in Mississippi was you're going to get a new sentence. So most counsel would have thought, I'll get that opportunity. Do you agree with that, all that? I'm not saying it gets you to 2254 relief. It's just we've got a sort of perfect storm of factors going on here. I have to push back on that a bit, and here's why. First, I mean, the 2013 opinions, the first two, and I mean, this is all in the legal background, but you had Parker, which was a direct appeal. Miller came out during the direct appeal. So it wasn't really a retroactivity thing. Of course, there was a vacatur, and the Mississippi Supreme Court sent it back down, said Miller came out while your case was a direct appeal. Then you had Jones, 2013, which eventually becomes Jones versus Mississippi. And the Mississippi Supreme Court vacated there. That was in the middle of a PCocracy, vacated what happened below, sent it back to redo Jones' what, in effect, was retroactive application. Then you have a couple of other cases in that time frame, but once you get to 2016, once you get to Montgomery, you have Chandler. Before Chandler, you had Cook versus State, which was a Mississippi Court of Appeals opinion in 2017 that the Mississippi Supreme Court denied cert on. It's cited in the Mississippi Court of Appeals decision in this case. You had those cases where it's one hearing. What you don't have is you don't have any Mississippi case saying this is exactly the process that must be followed. But was Chandler, in Chandler, was the sentence vacated before that one hearing? No. In our brief, you can see. Well, that's where I got that from, I guess. I'm trying to remember all of this, and it's dangerous because I was involved in some of this. Not this case. We had Miller cases while I was on that court, but it's been a little rusty. But even then, as you look at page 495 of the Court of Appeals case in Trotter, Judge Greenlee is laying out this law. He's got a parenthetical from Parker that says, well, Miller doesn't require, per se, to vacate the sentence or to set aside the sentence as unconstitutional. He says, the sentence itself is not unconstitutional. Rather, it is unconstitutional to impose the sentence absent the considerations of  I mean, that's what I recall the law to be, but I mean, I've apprehended counsel opposite to say that Chandler was a vacater case. And, you know, again, you could sort of take the point that that's what he was expecting to get here, a vacater and then a new hearing. Well, and the law wasn't clear at that time, certainly. Well, here's the easiest place to look for what happened to Chandler. The trial court order is on Westlaw. It's cited in our brief, and you can see it was one hearing. It was one hearing. I mean, that's the point on Chandler by the time, and that was before the September 2018 hearing in this case. But I think at bottom, it was Judge Brown that captured this well. I mean, the point is that there was no case that said you have to do it that way. No Mississippi State case that said you have to do it that way. And because there's no case that says you have to do it that way, you can't fault the Court of Appeals in this case for saying that the one hearing approach was appropriate. That also gets me into- Was there an oral argument at the intermediate court? Was there an oral argument? Court of Appeals? Yeah. I don't think there was an oral argument. And then further relief was sought from the Supreme Court? Was it on the grounds that, oh my gosh, I just misapprehended. I should have disaggregated these two. It was on the grounds primarily, the cert petition to the Mississippi Supreme Court. It was on the grounds primarily of this idea about Chandler and Warden and applying state law retroactively. I do want to say on that score, as my time's running low, I mean, once you set aside the, you know, did this satisfy Montgomery-  Okay. The clearly established federal law thing. When you get into this state law and application of state law retroactively and all of this, you've got a problem that's beyond the COA. You've got a problem that you don't award habeas relief on violations of state law. That's a basic 2254A problem. And then you just have the point, and this is where Chandler and Cook and the subsequent cases that Judge Wilson's remembering. I think I counted six that you had. But in those subsequent cases- You were busy. It just seemed like 40. I'm joking. There were plenty of those where it was a one hearing, no vacatur, and then a later resentencing hearing situation. With that, I would say, you know, the state's position is 2254B, bars relief. Affirm the district court's judgment. Thank you, counsel. Mr. Boone, you have a rebuttal argument. A couple of follow-ups to the questions to counsel opposite. The first is, you were asking good questions about the Mueller brief. There wasn't any, because that's not what we viewed, what I viewed the hearing to be about. The trial court had the same problem. The trial court was trying to apply the Mueller factors based on zero evidence of Mueller in the underlying proceeding. There may be some tangential thing about the existence of the circumstances of the crime, which were part of the other two issues. But there was no Mueller proof. The court is quite correct that when I tried to talk about the education of Leon, the state objected twice on relevance. When you went up afterwards, I mean, this is not meant to be hurtful, because Mueller and the Eighth Amendment is an evolving area of law.  But in all the subsequent reliefs, state court, did you ever say, my mistake? Well, because I don't believe it was my mistake. I believe the law was perfectly crystal clear that what happens is you get a vacating of the sentence, period. And there are substantive things that happen from that, as the court well knows. You get appointed counsel when you have a vacated sentence and you're doing resentencing. You get the opportunity to ask for experts. You get the opportunity to ask for mitigating investigators. You get, perhaps, a jury to re-sentence him, although I don't know whether that would be applicable in Mr. Trotter's case or not. All of these rights flow from vacating the sentence. That's why it's key. That's why we believe that was what it was. But post-Montgomery, these people are not getting any of that. Pardon? Post-Montgomery, they're not getting new sentencing hearings, where the government's got a burden to a preponderance, and you're right, the district court can call experts. So we know that's just not the world that Montgomery has put people like your client in. Well, except that, that's exactly what happened in Mississippi. Even after Montgomery, even after Wharton, the trial court in Wharton, which was after Montgomery, it vacated the sentence and did a resentencing hearing. And they got experts. And they got all the proof that Judge Wilson was talking about. Even in McGilvary, which was a 2020 decision, the trial court in McGilvary, which was after the Wharton case and changed the procedure, the trial court in McGilvary vacated the sentence. And McGilvary got a vacated sentence. And he got an expert. And he got all the proof and all the things that flow from that. That's the fundamental problem. And in a way, Judge, your honors, it was the perfect storm. Now, if I was responsible for that, then what this ruling and affirmance at this court will mean that the next phase is an ineffective assistance of counsel by me. Now, I've seen that. I mean, and I don't know Mississippi habeas law. You still have that opportunity? Well, I don't know the answer to that. And I wouldn't be the right one to answer it anyway. Because if it's about my conduct, then I need to step aside and let Mr. Trotter have able counsel to represent him on that. But the court is quite correct that the Chandler case, it didn't say it either. At 242 Southern 2nd, the Chandler case said that they granted Chandler's permission to set aside the verdict. That's the vacate. That's what they did in Chandler too. Every single case said that. Every single case. And they changed the rule in Wharton, which we acknowledge, but it was wrong for the Mississippi Supreme Court of Appeals to say, oh, well, we changed it in Wharton, which hadn't even been decided yet. Well, but Judge Greenlee grappled with that very point and all these other points in the Mississippi Court of Appeals analysis. And again, we've got to conclude that they just completely departed from what federal law required. Judge Greenlee said, I'm dealing with the Trotter decision at page 495, that Jones versus State basically made clear that a sentence of life without parole can be applied constitutionally to juveniles who fail to convince the sentencing authority, et cetera, that the Miller factors aren't met. Trotter should have known that he had the burden of showing that he should be re-sentenced to life with the possibility of parole. So the court deals with all these arguments, but rejects them. And we've got to be deferential to that conclusion unless they just completely whiffed on the federal law, right? And they completely whiffed on the federal law because that standard wasn't in place at the time that we were doing the hearing. I request, I am here not asking, this is a uniform, I believe. The facts, the circumstances, and the timing, the exact timing worked against Mr. Trotter. You can craft a narrowly crafted order that doesn't disturb any of the Miller procedures in any other case. Because it is true that in this case, Trotter's sentence should have been vacated. In this case, Trotter was entitled to but maybe didn't get a discretionary sentencing procedure, which is required by the Miller cases. In this case, the Trotter was held to follow a process that wasn't in place yet, and was contrary to the process that was in place. You can narrowly craft that order that applies only to Trotter, and it doesn't do anything else to any other Miller procedures. And we suggest that is the correct order. Thank you, counsel. Thank you for your pro bono work as well. That concludes the cases for the day.